UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE THE MATTER OF: | ) |
| | ) |
| RICHARD F. INGRAM, | ) |
|    *Plaintiff,* | ) |
| | ) 1:17CV-02258 |
| | ) |
| vs. | ) Hon. Judge Jorge Alonso |
| | ) |
| E*TRADE Bank, a New York Corporation, or a | ) |
| Virginia Corporation and Specialized Loan | ) |
| Servicing, LLC., a Foreign Corporation, | ) |
|    *Defendants.* | ) |

# AMENDED COMPLAINT

NOW COMES PLAINTIFF RICHARD F. INGRAM, by and through his counsel Calvita J. Frederick, and in support of his amended complaint against the Defendants, E*TRADE BANK and Specialized Loan Servicing LLC, states as follows:

## THE PARTIES

1. At all times relevant hereto, Plaintiff Richard F. Ingram (hereinafter "Ingram" or "Plaintiff") was an individual residing within the City of Chicago, County of Cook, and the State of Illinois.

2. Upon information and belief, E*TRADE Bank, (hereinafter E*TRADE" or "Defendant(s)") is believed to be either a New York Corporation or a Virginia Corporation, but has no official registration with the Illinois Secretary of State to transact business within the State of Illinois as a domestic or foreign corporation. E TRADE Bank is pursuing Ingram in a foreclosure action, in the Circuit Court of Cook County cause numbered 15 CH 9219..

3. Specialized Loan Servicing, LLC., ("SLS" or "Defendant(s)") is a Foreign Corporation, licensed to do business in the State of Illinois with its principal place of business located 8742 Lucent Blvd Suite 300, Highland Ranch, Colorado, 80129, and is purportedly, servicing agent for Ingram's home equity line of credit.

## FACTS COMMON TO ALL COUNTS

4. Ingram originally entered an into Agreement for an Equity Line of Credit ("LOC") with Countrywide Home Loans on or about December 2, 2004. See attached Exhibit "A")

5. The LOC provided for up to $142,500.00 that Ingram could access as needed by writing checks provided to him by Countrywide.

6. The LOC was secured by a Mortgage (LOC) on the property located at 6523 S. Woodlawn, Chicago, Illinois 60637, which Mortgage (LOC) was signed by Ingram. (See Mortgage attached hereto as Exhibit "B")

7. No Note was signed by Ingram as evidence of this indebtedness.

8. Ingram did sign a Home Equity Credit Line Agreement and Disclosure Statement, which set out the terms for Ingram's reoccurring draws against the LOC. (See Agreement attached hereto as Exhibit "A")

9. The LOC did not provide for a tax escrow, and Ingram was to keep the real estate taxes paid.

10. Sometime in March of 2009, Ingram received a notice welcoming him to Bank of American ("BAC") as a Countywide customer.

11. On or about June 13, 2011 Ingram received a notice that the servicing of his home equity line of credit was being sold, assigned or transferred from BAC Home Loans Servicing,

LP, a subsidiary of Bank of America N.A. (BAC Home Loans Servicing, LP) to Specialized Loans Servicing, LLC, effective July 25, 2011. (See Notice attached hereto as Exhibit "C")

12. Ingram fell behind on the payment of the real estate taxes due for the first installment of 2011. On June 29, 2012, First American Real Estate Tax, believed to be an agent for SLS paid the first installment of 2011 real estate taxes. The amount paid was $1,314.65.

13. The second installment of 2011 real estate taxes was paid by SLS in the amount of $1,005.41, on July 26, 2012.

14. The total amount for the real estate taxes for the year 2011 was $2,338.66, which included the first and second installment of real estate taxes plus interest and penalties.

15. SLS used the total yearly amount of $2,338.66 as the amount due for real estate taxes for the first installment and also $2,338.66 as the amount due for the real estate taxes for the second installment for the tax year 2011 in calculating the escrow amount needing to be paid by Ingram. (See Exhibit "D" attached hereto)

16. SLS demanded that Ingram pay $791.66 per month, which amount represents a double escrow payment. (See Notice attached as Exhibit "E")

17. SLS placed Ingram and his LOC in a forced placed escrow, for the double escrow payment of $791.66 each month beginning September 25, 2012. (See Notice Attached as Exhibit ("F")

18. On November 16, 2012, Ingram wrote a letter to SLS explaining the error in the calculations and asking that SLS analyze and adjust the escrow account. (See Exhibit "G")

19. SLS responded with a letter dated November 29, 2012 showing the correct amount to be $205.85 for the monthly escrow payment and $195.98 for the escrow shortage payment. for a total of $401.83 due to be paid by Ingram each month.

20. Ingram actually paid $350.00 total escrow payment for September 25, 2012; $400.00 for the escrow payment for October 25, 2012; and $450.00 for the escrow payment for the November 25, 2013. Ingram made these payments in addition to the principal and interest payments also paid at the same time. In addition, Ingram made the monthly escrow payment via separate checks from the one he tendered for the principal and interest payment.

21. SLS continued to show the $791.00 due for the months of September, October and November of 2012 as delinquent and reported the delinquent payments to the national credit bureaus.

22. Ingram sent another letter to SLS via his legal counsel dated December 8, 2012, once again complaining of the inaccurate escrow amount. (See Letter attached hereto as Exhibit "H")

23. On February 8, 2013 SLS sent a letter in response to Ingram's counsel's letter wherein the miscalculation was admitted and the monthly escrow payment amount was adjusted to $450.65 effective September 2012. In addition, the letter from SLS stated that the three payments for September, October, and November 2012 were reversed and reapplied to the account with the correct monthly amount of $720.19, which amount included principal, interest and escrow (See Exhibit I attached hereto).

24. Notwithstanding, SLS failed and refused to correct the inaccurate report of delinquency for the months of September, October and November of 2012 with the national credit bureaus.

25. Moreover, SLS has continued to report Ingram delinquent on this account for each and every month since November of 2012, continuing to today.

26. Ingram has been current on the payment of his LOC, including the payments for principal, interest and escrow, each and every month, including the months of September, October and November of 2012.

27. At some point in or around January of 2015, SLS stopped accepting the monthly payments from Ingram, and thereafter began to return the monthly payments to Ingram, demanding that Ingram make a large lump sum payment to reinstate the loan. (See Letter attached hereto as Exhibit "J").

28. Arguably E*Trade received an Assignment related to the property from Mortgage Electronic Registration Systems dated on or about February 20, 2015 and recorded on May 26, 2015 (See Assignment attached hereto as Exhibit "K").

29. Thereafter E*Trade initiated foreclosure proceedings against Ingram.

30. Ingram's delinquency was intentionally, negligently and/or fraudulently created by E*Trade and/or SLS's refusal to correct the admittedly improperly calculated escrow amounts due and also because of Defendant's failure and refusal to accept the mortgage and escrow payments timely submitted by Ingram each and every month.

31. As a result of the wrongful acts of E*TRADE Bank, and/or SLS, Ingram has been greatly harmed in his credit rating and score, his ability to obtain credit, his ability to maintain the credit lines he had in place, and the ability to conduct his real estate business.

32. As a result of the inaccurate reports of delinquency to the credit bureaus over more than four years, Ingram has suffered the following damages:

A. Ingram's credit score has been reduced by more than 100 points;

B. Ingram has lost more than $100,000 in available credit lines from ten different banks and/or credit institutions reducing his credit limits;

C. Because of the reduction in the available credit line, Ingram has been forced to use 80-90 % of his credit line as opposed to his pattern and practice of using no more than 10-20% of his available credit line, which factor further negatively affects his credit score;

D. Ingram is in the business of buying and flipping real estate and has been unable to continue in that business because of the reduction in his available credit; and

E. Ingram is also in the business of renting residential real estate and has been unable to make normal and necessary repairs to properties because of the reduction in his available credit.

## COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

33. Ingram restate and realleges the allegations contained in Paragraphs 1-32 of the Complaint.

## JURISDICTION

34. The Court has jurisdiction over this action pursuant to 15 U.S.C. § 1692 et seq., the "Fair Debt Collection Practices Act (FDCPA)

35 E*Trade is a person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is a "debt collector" as defined by 15 U.S.C. § 1692a (6).

36. SLS is a person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is a "debt collector" as defined by 15 U.S.C. § 1692a (6).

37. E*Trade is a person who offers or extends credit creating a debt or to whom a debt is owed and is a "Creditor" as defined by 15 U.S.C. § 1692a (4).

38. SLS is a person who offers or extends credit creating a debt or to whom a debt is owed and is a "Creditor" as defined by 15 U.S.C. § 1692a (4).

39. Ingram is a natural person obligated or allegedly obligated to pay any debt and is a "consumer" as defined by 15 U.S.C. § 1692a (3).

40. The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium as defined by 15 U.S.C. § 1692a (2).

41. Defendants communicated with Plaintiff in connection with the collection of the debt owed by Ingram to Defendants on a regular basis including but not limited to those communications attached hereto as Exhibits C -Exhibit K.

42. Plaintiff communicated with Defendants in connection with the collection of the debt owed by Ingram to Defendants on a regular basis including but not limited to those communications attached hereto as Exhibits C -Exhibit K.

43. Monies owed by Plaintiff to Defendants is an obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes and is a "debt" within the meaning of 15 U.S.C. § 1692a (5).

44. Since November of 2012, and continuing to this date, Defendants made many collection attempts from the Plaintiff, regarding the aforementioned LOC.

45. Defendants' collection attempts contained in their communications with the Plaintiff since November of 2012 to date contain false and inaccurate information, including but not limited to the amount due for the tax escrow, allegations of delinquency reported to all credit

reporting agencies, and Defendants' promise that the monthly escrow payment amount was adjusted to $450.65 effective September 2012. In addition, communications from SLS inaccurately and falsely stated that the three payments for September, October, and November 2012 were reversed and reapplied to the account with the correct monthly amount of $720.19, which amount included principal, interest and escrow

46. Defendants actions against the Plaintiff are an ongoing and continuing violation and the statute of limitations began to run anew each time a potential creditor requested a credit report for Ingram, and each time credit was denied to Ingram or one of Ingram's credit lines reduced based on an outstanding account that had been fraudulently reported.

47. Plaintiff has disputed the accuracy of the derogatory information reported by the Defendants to the various consumer-reporting agencies on several separate occasions via mail. (See Letters attached hereto as Exhibits "G-H").

48. Defendants have a pattern and practice of engaging in unfair and unconscionable conduct when attempting to collect a debt.; by refusing to correct admitted errors in calculations related to a debt, by consistently reporting a debt delinquent to all credit bureaus when Defendants know that the debt is not delinquent; by requiring and demanding that Plaintiff pay to Defendants more than what is owed; by refusing to accept proper payments timely submitted by the Plaintiff, thereby creating a delinquency, and by filing mortgage foreclosure proceedings against Plaintiff for a delinquency which Defendants intentionally, deliberately and fraudulently created.

49. Defendants have used the same unconscionable and unfair collection practice against the Plaintiff with regard to another piece of real estate.

50. Upon information and belief, Plaintiff believes that Defendants have utilized this same unconscionable and unfair collection practice against many other Plaintiffs.

WHEREFORE Plaintiff respectfully prays that this Court enter judgement against the Defendants for violation of 15 U.S.C. § 1692 et seq., the "Fair Debt Collection Practices Act" in an amount equal to his damages allowable under the statute, plus court costs and legal fees.

## COUNT II

## VIOLATION OF THE DECEPTIVE BUSINESS PRACTICES ACT 815 ILCS 505

51. Ingram restates and realleges the allegations contained in Paragraphs 1-32 of the co Complaint.

52. Pursuant to Section 2 of the Illinois Fraud and Deceptive Business Practices Act, ("IDBPA")815 ILCS 505/2, and other applicable statutes, E*TRADE thru the acts of its agent servant and/or employee SLS engaged in unfair methods of competition and unfair deceptive acts or practices with each of the following acts and omissions:

   a. Deceptively misrepresented the amount of $2,338.66 as the amount due for real estate taxes for each of the first and second installment in calculating the escrow amount needing to be paid by Ingram.

   b. Unfairly demanded that Ingram pay $791.66 per month, which amount represents a double escrow payment, in violation of 215 ILCS 5/154.6(n).

   c. Unfairly and deceptively placed Ingram and his LOC in a forced placed escrow for the double escrow payment of $791.66 each month beginning September 25, 2012, with full knowledge that the amount was incorrect, in violation of 215 ILCS 5/154.6(n).

   d. Deceptively and unfairly continued to misrepresent the amount due as $791.66 due for the months of September, October and November of 2012 and continuing to today, as delinquent and reported the claimed delinquent payments to the national credit bureaus, in violation of 215 ILCS 5/154.6(n).

   e. Admitted the miscalculations in response to Ingram's letter and then misrepresented to Ingram that the monthly escrow payment amount was adjusted to $450.65 effective September 2012, in violation of 215 ILCS 5/154.6(n).

   f. Deceptively and unfairly misrepresented to Ingram that the three payments for September, October, and November 2012 were reversed and reapplied to the account with the correct monthly amount of $720.19, which amount included principal, interest and escrow, in violation of 215 ILCS 5/154.6(n).

   g. Deceptively and unfairly failed and refused to correct the inaccurate report of delinquency for the months of September, October and November of 2012 with the national credit bureaus, in violation of 215 ILCS 5/154.6(n).

   h. Deceptively and unfairly continued to misrepresent and to report Ingram delinquent on this account to the credit bureaus for each and every month since November of 2012, continuing to today, in violation of 215 ILCS 5/154.6(n).

   i. Deceptively and unfairly failed and refused to accept Ingram's timely and accurate payments each month thereby intentionally, unethically and falsely creating a cause of action against him for foreclosure, in violation of 215 ILCS 5/154.6(n).

   j. Deceptively and unfairly misrepresented to the Circuit Court of Cook County by filing documents indicating a cause of action against Ingram exists for foreclosure, in violation of 215 ILCS 5/154.6(n).

   k. Has at all times acted in a manner toward Ingram that was unethical, oppressive, unscrupulous, deceptive, and unfair and caused substantial injuries to Ingram, in violation of 215 ILCS 5/154.6(n).

   l. Deceptively and unfairly failed and refused to provide a monthly accounting of escrow funds on hand as required by Illinois law.

   m. Deceptively and unfairly failed to attempt in good faith to effectuate prompt, fair and equitable settlement of claims, questions or concerns submitted in which errors had become reasonably clear, in violation of 215 ILCS 5/154.6(d).

   n. Deceptively, unfairly, wrongfully and without justification terminated Ingram's line of credit, (See Exhibit "N")

53. Based upon the foregoing allegations, and in accordance with the IDBPA, Defendants are guilty of many deceptive acts and unfair practices as relates to the Plaintiff.

54. Pursuant to Section 2 of the Illinois Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, Defendants, intended that Ingram rely on each of the foregoing unfair methods of competition and unfair deceptive acts or practices.

55. Pursuant to Section 2 of the Illinois Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, each of the foregoing unfair methods of competition and unfair deceptive acts or practices occurred in the course of conduct involving trade or commerce.

56. As a direct and proximate result of each of the foregoing unfair methods of competition and unfair deceptive acts or practices by Defendants, Richard F. Ingram's mortgage has been deemed to be in default and Ingram has been sued in foreclosure.

57. As a direct and proximate result of each of the foregoing unfair methods of competition and unfair deceptive acts or practices, Ingram has been greatly damaged in his credit rating and ability to conduct his business.

58. As a direct and proximate result of each of the foregoing unfair methods of competition and unfair deceptive acts or practices, Ingram has incurred expense and other damages.

WHEREFORE, Richard F. Ingram asks for damages against the E*TRADE Bank, and SLS individually, pursuant to subsections 10a(a) and (c) of the Illinois Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a(a), (c), in an amount in excess of one hundred fifty thousand dollars ($150,000.00) to compensate him for his damages, statutory damages, attorney fees, punitive damages, costs, and any further relief the Court deems proper.

## COUNT III

## NEGLIGENCE

59. Ingram restates and realleges the allegations contained in Paragraphs 1-32 of the Complaint.

60. That Defendants owed a duty to the Plaintiff, to use reasonable care in the conduct of their business as related to the collections of debts owed by consumers including a duty to accurately and fairly report payment information, to abstain from deceptive and unfair business practices and to generate and report fair and honest communications about collection practices for debts owed to Plaintiff and to others about the Plaintiff.

61. That, disregarding its stated duties, Defendant(s) by their agents, servants, and employees committed one of the following acts and omissions:

   a. SLS knowingly and intentionally misrepresented the amount of $2,338.66 as the amount due for real estate taxes for each of the first and second installment in calculating the escrow amount needing to be paid by Ingram;

   b. SLS demanded that Ingram pay $791.66 per month, which amount represents a double escrow payment;

   c. SLS placed Ingram and his LOC in a forced placed escrow, for the double escrow payment of $791.66 each month beginning September 25, 2012, with full knowledge that the amount was incorrect, , in violation of 215 ILCS 5/154.6(n);

   d. Continued to misrepresent the amount of $791.00 due for the months of September, October and November of 2012 as delinquent and reported the delinquency to the national credit bureaus;

   e. Admitted the miscalculations in response to Ingram's letter and then misrepresented to Ingram that the monthly escrow payment amount was adjusted to $450.65 effective September 2012;

   f. Misrepresented to Ingram that the three payments for September, October, and November 2012 were reversed and reapplied to the account with the correct monthly amount of $720.19, which amount included principal, interest and escrow;

   g. Failed and refused to correct the inaccurate report of delinquency for the months of September, October and November of 2012 with the national credit bureaus;

   h. Continued to misrepresent and to report to the credit bureaus Ingram delinquent on this account for each and every month since November of 2012, continuing to today;

      i.      Failed and refused to accept Ingram's timely and accurate payments each month thereby intentionally, unethically, and falsely creating a claim of action against him for foreclosure;

      j.      Misrepresented to the Circuit Court of Cook County and filed documents indicating a cause of action against Ingram exists for foreclosure;

      k.      Has at all times acted in a manner toward Ingram that was unethical, oppressive, unscrupulous and cause substantial injuries to Ingram;

      l.      Failed and refused to provide a monthly accounting of escrow funds on hand and to account for escrow monies as required by law; and

      m.      Failed and did not attempt in good faith to effectuate prompt, fair and equitable settlement of claims, questions or concerns submitted in which errors had become reasonably clear.

      n.      Wrongfully and without justification terminated Ingram's line of credit. (See Exhibit "N").

      o.      That Anselmo, Lindberg, Oliver, LLC failed and refused to respond to the letter of Ingram's counsel. And

      p.      Failed to prevent the filing of the foreclosure lawsuit even when prior to the filing of the foreclosure action by Anselmo, Lindberg, Oliver, LLC against Ingram, Defendants and their attorneys, learned the facts, learned that the facts that demonstrated that a delinquency were not clear, that miscalculations had occurred which had been acknowledged by Defendants, and that Ingram was not behind on his monthly payments.

62.      At all times relevant, Defendants breached their duty and intentionally, willfully, and with reckless disregard for the consequences by each of the acts and omissions set out below in responding to the questions of Ingram:

      a.      It chose to misrepresent the correct amount of the real estate escrow for Ingram's property;

      b.      It chose to refuse to correct the error made by reporting Ingram delinquent to the credit bureaus;

      c.      It chose to continue to report Ingram delinquent to the credit bureaus for more than four years, including up to today;

      d.      It chose to refuse to accept Ingram's timely made principal, interest and escrow payments; and

   e. It chose to initiate legal proceedings against Ingram with full knowledge that it had no valid claim against him.

63. As a direct and proximate result of each of the foregoing wrongful acts and omissions, Ingram was required to obtain legal counsel to defend the foreclosure action filed by E*TRADE at a great cost to him.

64. As a direct and proximate result of each of the foregoing wrongful actions and omissions, Ingram has incurred expense and other damages that were caused by E*TRADE Bank and/or SLS.

WHEREFORE, Ingram asks for damages against Defendants and each of them, in an amount in excess of one hundred fifty-thousand dollars ($150,000.00) to compensate him for his damages caused by the misconduct of the E*TRADE Bank and SLS and for punitive damages, and costs.

           Respectfully submitted,

           By__/s/ Calvita J. Frederick_____
           CALVITA J. FREDERICK

Calvita J. Frederick
Attorney for Defendants/Plaintiff
Post Office Box 802976
Chicago, Illinois 60680-2976
(312) 421-5544
ARDC # 6184001